**No. 26-4551**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

EMILIE JACKSON-EDNEY *et al.*,

*Plaintiffs-Appellees,*

v.

RAUL LABRADOR, in his official capacity as Attorney General of the State of Idaho, *et al.*

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Idaho, Southern Division
No. 1:26-cv-00261-AKB | Hon. Amanda K. Brailsford

# BRIEF OF INDIANA, 20 OTHER STATES, AND THE ARIZONA LEGISLATURE AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

JOHN P. LOWREY
Deputy Solicitor General

DENISHA CHETTY
Deputy Attorney General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for Amici Curiae*
*(Additional counsel listed after signature block)*

## CORPORATE DISCLOSURE AND RULE 29 STATEMENTS

As governmental parties, *amici curiae* are not required to file a disclosure statement. Fed. R. App. P. 26.1(a); 9th Cir. R. 29-1(b). Nevertheless, *amici curiae* certify that all parties in this proceeding have consented to the filing of this amicus brief pursuant to Federal Rules of Appellate Procedure 29(a)(2).

Pursuant to Federal Rules of Appellate Procedure 29(a)(4)(E), *amici curiae* state that no party's counsel authored this brief in whole or in part, and no party or party's counsel made a monetary contribution intended to fund preparing or submitting this brief. No person other than *amici* or their counsel made a monetary contribution to the preparation or submission of this brief.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE AND RULE 29 STATEMENTS .............ii

TABLE OF AUTHORITIES..................................................................iv

INTRODUCTION AND INTERESTS OF AMICI CURIAE ....................1

SUMMARY OF ARGUMENT ............................................................2

ARGUMENT ........................................................................................4

I. H.B. 752 Provides Sufficient Notice of Prohibited Conduct...........4

A. H.B. 752 aligns with a widely understood practice...............5

B. H.B. 752's exceptions do not render it vague .........................8

II. H.B. 752 Is Not So Standardless as to Encourage Arbitrary Enforcement ........................................................................12

CONCLUSION ..................................................................................18

ADDITIONAL COUNSEL ..................................................................19

CERTIFICATE OF COMPLIANCE...................................................21

CERTIFICATE OF SERVICE............................................................22

# TABLE OF AUTHORITIES

## CASES

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022) (en banc) ........................................... 1

*Ballard v. United States*,
329 U.S. 187 (1946)................................................................... 2

*Barnes v. Felix*,
605 U.S. 73 (2025)..................................................................... 16

*Beckles v. United States*,
580 U.S. 256 (2017)................................................................... 13

*Boyce Motor Lines, Inc. v. United States*,
342 U.S. 337 (1952)................................................................... 5

*California Teachers Ass'n v. State Bd. of Educ.*,
271 F.3d 1141 (9th Cir. 2001) ...................................................... 12, 13

*Calzone v. Summers*,
942 F.3d 415 (8th Cir. 2019)......................................................... 11

*City of Chicago v. Morales*,
527 U.S. 41 (1999)..................................................................... 4

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982)................................................................... 4

*Esteban v. Cent. Missouri State Coll.*,
415 F.2d 1077 (8th Cir. 1969)....................................................... 16

*Farrell v. Burke*,
449 F.3d 470 (2d Cir. 2006) ......................................................... 13

*Faulkner v. Jones*,
10 F.3d 226 (4th Cir. 1993).......................................................... 7

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012)................................................................... 15

**CASES [CONT'D]**

*Gonzales v. Carhart*,
550 U.S. 124 (2007) .......... 17

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) .......... 3, 4, 9, 17

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) .......... 6

*Hill v. Colorado*,
530 U.S. 703 (2000) .......... 13

*Kashem v. Barr*,
941 F.3d 358 (9th Cir. 2019) .......... 16

*Kolender v. Lawson*,
461 U.S. 352 (1983) .......... 3, 4, 13, 14

*Levas & Levas v. Vill. of Antioch*,
684 F.2d 446 (7th Cir. 1982) .......... 15

*McBoyle v. United States*,
283 U.S. 25 (1931) .......... 5, 9

*McFadden v. United States*,
576 U.S. 186 (2015) .......... 17

*Nat'l Org. for Marriage v. Daluz*,
654 F.3d 115 (1st Cir. 2011) .......... 9

*Posters 'N' Things, Ltd. v. United States*,
511 U.S. 513 (1994) .......... 16

*Record Head Corp. v. Sachen*,
682 F.2d 672 (7th Cir. 1982) .......... 14

*Sandifer v. U.S. Steel Corp.*,
571 U.S. 220 (2014) .......... 12

**CASES [CONT'D]**

*Schleifer by Schleifer v. City of Charlottesville*,
159 F.3d 843 (4th Cir. 1998) .......... 13, 17

*Scott v. United States*,
436 U.S. 128 (1978) .......... 11

*Smiley v. Jenner*,
173 F.4th 865 (7th Cir. 2026) .......... 14

*United States v. Nat'l Dairy Prod. Corp.*,
372 U.S. 29 (1963) .......... 5

*United States v. Ragen*,
314 U.S. 513 (1942) .......... 11

*United States v. Virginia*,
518 U.S. 515 (1996) .......... 2

*United States v. Williams*,
553 U.S. 285 (2008) .......... 3, 5

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982) .......... 8

**CONSTITUTIONAL PROVISIONS AND STATUTES**

U.S. Const. amend. XIV, § 1 .......... 4

Ala. Code § 16-1-54 .......... 7

Ark. Code Ann. § 9-6-113 .......... 7

Fla. Stat. § 553.865 .......... 7

Fla. Stat. § 553.865(2) .......... 7

Idaho Code § 18-4117 .......... 5, 8, 14

Idaho Code § 18-4117(2)(e) .......... 9

Idaho Code § 18-4117(2)(f) .......... 9

## CONSTITUTIONAL PROVISIONS AND STATUTES [CONT'D]

Iowa Code § 216.9A ........ 7

Iowa Code § 280.33 ........ 7

2026 Kan. Sess. Laws, Ch. 3, § 1 ........ 7

2026 Kan. Sess. Laws, Ch. 3, § 1(g)(3) ........ 7

Ky. Rev. Stat. Ann. § 158.189 ........ 7

La. Stat. Ann. §§ 9:55–9:65 ........ 7

Miss. Code Ann. § 29-18-7 ........ 7

Miss. Code Ann. § 29-18-9 ........ 7

Mont. Code Ann. § 50-4-1203 ........ 7

N.D. Cent. Code § 15.1-06-21 ........ 7

Ohio Rev. Code Ann. § 3345.90 ........ 7

Okla. Stat. tit. 57, § 509.7 ........ 7

S.C. Code Ann. § 59-23-510, et seq. ........ 7

S.D. Codified Laws § 13-32-23 ........ 7

Tenn. Code Ann. § 68-120-120 ........ 7

Tex. Gov't Code Ann. § 30002.051 ........ 7

Utah Code Ann. § 63G-31-302 ........ 7

Va. Code Ann. § 22.1-23.3 ........ 7

W. Va. Code § 5-32-6 ........ 7

Wyo. Stat. Ann. § 1-39-1-24 ........ 7

**CONSTITUTIONAL PROVISIONS AND STATUTES [CONT'D]**

Wyo. Stat. Ann. §§ 9-27-101–9-27-103 .......... 7

**OTHER AUTHORITIES**

W. Burlette Carter, *Sexism in the "Bathroom Debates": How Bathrooms Really Became Separated by Sex*, 37 Yale L. & Pol'y Rev. 227 (2018) .......... 2, 6

Cristina D. Lockwood, *Defining Indefiniteness: Suggested Revisions to the Void for Vagueness Doctrine*, 8 Cardozo Pub. L. Pol'y & Ethics J. 255, 256 (2010) .......... 13

*Available,* Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/available .......... 10

*Dire*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/dire .......... 11

2023 Nebraska Executive Order 23-16 .......... 7

*Need*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/need .......... 11

*Reasonable*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/reasonable .......... 10

*Reasonably,* Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/reasonably .......... 10

## INTRODUCTION AND INTERESTS OF AMICI CURIAE

The States of Indiana, Alabama, Arkansas, Florida, Georgia, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Utah, West Virginia, and Wyoming, as well as the Arizona State Legislature, submit this brief in support of Appellants. This case "involves the unremarkable—and nearly universal—practice of separating [] bathrooms based on biological sex." *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 796 (11th Cir. 2022) (en banc). Like Idaho, Amici States, local governments, public-school corporations, and private proprieties regularly designate bathrooms, changing rooms, and similar facilities as reserved for men or women. That gives Amici States a significant interest in ensuring those commonsense designations can be enforced to protect citizens' privacy and safety.

The district court's decision invalidating Idaho's House Bill 752 (H.B. 752) threatens amici's interest. For generations, people have had no trouble discerning which bathroom door—the men's or women's—through which they should walk. That is a situation any person who works outside the home, travels for long distances, or attends school must

navigate. But the district court invoked a few edge cases to reach the remarkable conclusion that a person of ordinary intelligence cannot tell whether to use a bathroom with a men's or women's sign. This Court should reverse the decision below and vacate the preliminary injunction.

## SUMMARY OF ARGUMENT

Idaho's House Bill 752 (H.B. 752), a bathroom regulation that aligns with a near-universal practice, is not unconstitutionally vague.

"Sex-separation dates back as far as written history will take us." W. Burlette Carter, *Sexism in the "Bathroom Debates": How Bathrooms Really Became Separated by Sex*, 37 Yale L. & Pol'y Rev. 227, 287–288 (2018). Sex-separated bathrooms and changing rooms allow for safety and privacy. *Id.* at 288. They reflect that "[p]hysical differences between men and women . . . are enduring" and that the "'two sexes are not fungible.'" *United States v. Virginia*, 518 U.S. 515, 533 (1996) (quoting *Ballard v. United States*, 329 U.S. 187, 193 (1946)).

Nothing in the Fourteenth Amendment forbids laws that preserve safety and privacy in sex-separated spaces. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct

is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

H.B. 752 does both. First, its command that each sex should use the restroom or changing room designated for that sex provides people of ordinary intelligence with fair notice of what is prohibited. It hardly takes an advanced degree to figure out that a woman should use a restroom with the sign saying "women," and a man should use the restroom with the sign saying "men."

The mere fact that H.B. 752 makes exceptions for situations in which no other toilet is "reasonably available" or there is a "dire need" does not render it unconstitutionally vague. Anyone who has gone on a road trip or attended a long meeting has had to decide whether a situation is desperate enough to warrant taking an earlier exit or excusing oneself to the restroom. H.B. 752 simply reflects common experience. The Constitution does not require the law to describe it with "mathematical certainty." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).

Second, H.B. 752 does not confer "standardless" discretion that "authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). It requires proof of objective

facts, such as the existence of a sign designating a restroom for men or women, and imposes a scienter requirement.

## ARGUMENT

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (quoting *Grayned* v. *Rockford*, 408 U.S. 104, 108 (1972)). A criminal law can be unconstitutionally vague for two reasons: (1) "it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits"; and (2) "it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). H.B. 752 steers well clear of both dangers.

### I. H.B. 752 Provides Sufficient Notice of Prohibited Conduct

H.B. 752 provides fair notice of what it prohibits. A statute gives "fair notice" if it "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited[.]" *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). This demands "no more

than a reasonable degree of certainty," not mathematical precision. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340 (1952). "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32–33 (1963). What is important is "that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). There is no requirement to account for every circumstance or eliminate close cases. *See United States v. Williams*, 553 U.S. 285, 306 (2008) ("Close cases can be imagined under virtually any statute.").

### A. H.B. 752 aligns with a widely understood practice

H.B. 752's core prohibition on "knowingly and willfully" "enter[ing]" a restroom or changing room "designated for use by the opposite biological sex" in a "government-owned building or a place of public accommodation," Idaho Code § 18-4117, passes muster. Its core prohibition should be sufficiently clear to anyone of ordinary intelligence: a man should not enter a restroom or changing room with a sign saying "women," and a

woman should not enter a restroom or changing room with a sign saying "men." Indeed, countless Americans have complied with similar directives on a daily basis from very young ages.

H.B. 752's mandate merely gives legal force to a well-established American practice that people across the demographic spectrum regularly follow without trouble. "Sex separation in bathrooms dates back to ancient times, and, in the United States, preceded the nation's founding." W. Burlette Carter, *Sexism in the "Bathroom Debates": How Bathrooms Really Became Separated by Sex*, 37 Yale L. & Pol'y Rev. 227, 229 (2018). And regulations governing single sex bathrooms have existed in both public and private spaces across America since the late nineteenth century. *Id.* at 279. Ordinary people have successfully navigated these limitations in public and private spaces beginning at very young ages.

Indeed, separating restrooms, locker rooms, and shower facilities based on sex is "commonplace and universally accepted—across societies and throughout history" due to the "physical differences between the sexes." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 634 (4th Cir. 2020) (Niemeyer, J., dissenting). These physical differences give rise to "privacy concerns" that "justif[y] separation and . . . demand a facility for

each gender that is different." *Faulkner v. Jones*, 10 F.3d 226, 232 (4th Cir. 1993). H.B. 752, which gives effect to a widely recognized and well-understood practice in private spaces, is not vague.

Nor is Idaho's law an outlier. Twenty-one states have some form of ban on using restrooms/changing rooms designated for the opposite sex,[1] and at least one additional State has established similar policies through executive order, *see* 2023 Nebraska Executive Order 23-16. Idaho is also not alone in applying criminal penalties to intruding into private spaces reserved for the other sex. Florida, Kansas, and Utah also criminally sanction people who knowingly uses a space designated for the opposite sex. *See* Fla. Stat. § 553.865(2); 2026 Kan. Sess. Laws, Ch. 3, § 1(g)(3); Utah Code Ann. § 63G-31-302.

---

[1] Alabama (Ala. Code § 16-1-54); Arkansas (Ark. Code Ann. § 9-6-113); Florida (Fla. Stat. § 553.865); Iowa (Iowa Code § 216.9A) (amending Iowa Civil Rights Act and Iowa Code § 280.33); Kansas (2026 Kan. Sess. Laws, Ch. 3, § 1); Kentucky (Ky. Rev. Stat. Ann. § 158.189); Louisiana (La. Stat. Ann. §§ 9:55–9:65); Mississippi (Miss. Code Ann. §§ 29-18-7, 29-18-9); Montana (Mont. Code Ann. § 50-4-1203); North Dakota (N.D. Cent. Code § 15.1-06-21); Ohio (Ohio Rev. Code Ann. § 3345.90); Oklahoma (Okla. Stat. tit. 57, § 509.7); South Carolina (S.C. Code Ann. § 59-23-510, et seq.); South Dakota (S.D. Codified Laws § 13-32-23); Tennessee (Tenn. Code Ann. § 68-120-120); Texas (Tex. Gov't Code Ann. § 30002.051); Utah (Utah Code Ann. § 63G-31-302); Virginia (Va. Code Ann. § 22.1-23.3); West Virginia (W. Va. Code § 5-32-6); and Wyoming (Wyo. Stat. Ann. § 1-39-1-24; §§ 9-27-101–9-27-103).

The district court's observation that H.B. 752 "does not define 'designated,'" Dkt. 58 at 16, hardly shows that it or similar laws are vague. H.B. 752 applies only to government owned buildings or a place of public accommodation that are "designated for use" by a single sex. Idaho Code §18-4117. Anyone who has used a public bathroom knows what this means. Public bathrooms come with signs or symbols indicating who should use the space. Bathrooms for the female sex are marked with "women" or a symbol of a woman while bathrooms for the male sex are marked with "men" or a symbol of a man. The sign or symbol acts to provide adequate notice, ensuring that there is no confusion. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 500, 501 (1982) ("designed . . . for use with illegal cannabis or drugs" refers to "objective features" and is not facially vague).

### B. H.B. 752's exceptions do not render it vague

Despite the clarity of H.B. 752's core prohibition, the district court held that it was unconstitutionally vague based on exceptions to that prohibition. Specifically, the district court took issue with two exceptions: The first permits an individual to "use a single-user facility designated for the opposite sex, if such single-user facility is the only facility

reasonably available at the time of the person's use of the facility." Idaho Code § 18-4117(2)(e). The second permits a person to "use restroom facilities when the person is in dire need of urinating or defecating and such facility is the only facility reasonably available at the time of the person's use." § 18-4117(2)(f). Both address ordinary circumstances people encounter and commonly navigate in their day-to-day life.

Each exception, moreover, does so—and thereby gives warning about the scope of the criminal law—"in language that the common world will understand." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). Even though the legislature did not define "reasonably available" or "dire need," ordinary people must navigate questions of restroom availability—and the urgency of the need to use one—every day as a basic part of life. Since legislatures are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110; *see also Nat'l Org. for Marriage v. Daluz*, 654 F.3d 115, 121 (1st Cir. 2011) ("[T]he mere fact that a regulation requires interpretation, does not make it vague" in violation of due process.) What *is* important is what "the ordinance as a whole prohibits." *Grayned,* 408 U.S. at 110. And that is clear.

Consider first the exception that allows a person to use a single-occupancy restroom designated for the other sex where no other facility is "reasonably available." "Available" means "present or ready for immediate use." *Available,* Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/available (last visited Sept. 2, 2026). And "reasonably" communicates that extreme measures are not required. *Reasonably,* Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/reasonably (last visited Sept. 2, 2026) ("in a reasonable manner"; "to a fairly sufficient extent"). *See also Reasonable*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/reasonable (last visited Sept. 2, 2026) ("not extreme or excessive"; "moderate, fair").

Ordinary people understand what this phrase means—as common practice illustrates. Americans of all ages frequently confront situations in which they must decide whether a toilet is reasonably available to them. Anyone who has been on a road trip has had to decide whether it would be too taxing to drive one more exit or aim for the next rest stop. Similarly, availability is well within the ordinary experience. An ordinary person understands that a facility is available where, for example,

it is accessible and capable of being used—as opposed to being locked, out of service, or simply so far away that it will not serve the need.

The mere fact that the term "reasonably" may be "broad" or its application vary with the factual context "does not mean that it is ambiguous, much less unconstitutionally vague." *Calzone v. Summers*, 942 F.3d 415, 426 (8th Cir. 2019). Undefined terms like "reasonably," "reasonable," and "reasonableness" appear throughout our law yet are not vague, this is "[b]ecause of the necessarily ad hoc nature of any determination of reasonableness, there can be no inflexible rule of law which will decide every case." *Scott v. United States*, 436 U.S. 128, 139 (1978). As the Supreme Court has explained, "a question of reasonableness is not sufficient to make [a statute] too vague to afford a practical guide to permissible conduct." *United States v. Ragen*, 314 U.S. 513, 523 (1942).

It likewise is permissible to have an exception for situations in which there is a "dire need" but no other multi-occupancy facility is reasonably available. "Dire" means "desperately urgent." *Dire*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/dire (last visited Sept. 2, 2026). A "need" is "a condition requiring supply or relief." *Need*, Merriam-Webster's Dictionary, https://www.merriam-

webster.com/dictionary/need (last visited Sept. 2, 2026). In combination, they refer to an urgent need for relief.

As with the remainder of H.B. 752, Americans of all demographics navigate this question daily. People on road trips regularly decide whether to stop at an exit or rest stop further along their route. Anyone who has been in class or a long meeting has had to decide whether a bodily function can wait until the end. And many more examples could be added to that list. Suffice it to say that H.B. 752 does not do more than capture common experience. It is not vague when considered against that context. *See California Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1151 (9th Cir. 2001) (providing "instruction" or presenting the "curriculum" are not vague because they are commonly understood by teachers); *see also Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 221 (2014) (explaining that the meaning of "changing clothes" is interpreted based on the term's broader context).

## II. H.B. 752 Is Not So Standardless as to Encourage Arbitrary Enforcement

H.B. 752 does not encourage arbitrary enforcement either. The Supreme Court has held that laws must "be sufficiently clear that those enforcing the law do not act in an arbitrary or discriminatory way."

*Beckles v. United States*, 580 U.S. 256, 266 (2017) (citation modified). This does not mean that a law must remove all discretion from enforcement, since "[e]very criminal law, of course, reposes some discretion in those who must enforce it." *Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 854 (4th Cir. 1998); *see also* Cristina D. Lockwood, *Defining Indefiniteness: Suggested Revisions to the Void for Vagueness Doctrine*, 8 Cardozo Pub. L. Pol'y & Ethics J. 255, 256 (2010) ("Arguably, law enforcement discretion always exists with the corresponding potential for discriminatory enforcement."). "A mere possibility that discretion might be abused hardly entitles courts" to enjoin the law's enforcement. *Schleifer,* 159 F.3d at 854. Rather, the question is whether the "legislature [has] establish[ed] minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 358 (citation modified).

In answering this question, a court necessarily must focus on the *statute's* content—not whether there might be close cases or cases in which the offense is difficult to prove. *See, e.g., California Teachers Ass'n*, 271 F.3d at 1151 (law should not be invalided based on "[u]ncertainty at [its] margins") (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)); *Farrell v. Burke*, 449 F.3d 470, 493 (2d Cir. 2006) (statutes should be upheld

if they "generally provides sufficient guidance" as part of the statute's core prohibition); *Record Head Corp. v. Sachen*, 682 F.2d 672, 678 (7th Cir. 1982) (the possibility for "isolated cases of possibly unjust enforcement" does not render a statute standardless; rather, the statute must be "essentially without legislative guidance" as to the offense). That is because the core concern is whether the legislature has abdicated its responsibility to make law, leaving the task of deciding what is criminal to others. *See Kolender*, 461 U.S. at 358.

H.B. 752 establishes minimal guidelines for law enforcement. For one thing, the fact that the statute contains a "core meaning" that people of ordinary intelligence can grasp "makes arbitrary or discriminatory enforcement unlikely." *Smiley v. Jenner*, 173 F.4th 865, 875 (7th Cir. 2026). For another, H.B. 752 requires proof of objective facts. It requires law enforcement to establish that (1) someone has "knowingly and willfully enter[ed] a restroom or changing room in a government-owned building or a place of public accommodation" and (2) that the restroom "is designated for use by the opposite biological sex of such person." Idaho Code § 18-4117. There is nothing subjective about whether someone has "enter[ed]" a restroom, whether a building is government-owned, whether

the restroom is "designated" for a given sex, or what "biological sex" is. The law contains sufficient guidelines that "the prosecutor can assess the arresting officer's case, the trial court can put the prosecutor to his proof, and the reviewing court can examine the trial court's findings." *Levas & Levas v. Vill. of Antioch,* 684 F.2d 446, 454 (7th Cir. 1982).

The district court objected that there could be situations in which it is difficult to "determine an individual's 'biological sex.'" Dkt. 58 at 16. But a "regulation is not vague because it may at times be difficult to prove an incriminating fact." *FCC v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012). A regulation is unconstitutionally vague only if "it is unclear as to what fact must be proved." *Id.* Here, there can be no difficulty in determining what fact—whether a person is of the male or female sex—must be proved. Adopting the district court's view of vagueness would threaten all manner of laws in which there are marginal or edge cases.

Equally unavailing is the district court's observation that there could be situations in which it is difficult to determine if an exception applies. But any exceptions do not render the core prohibition vague—a person should not enter a restroom reserved for the opposite sex. Exemptions covering circumstances where no other restroom is "reasonably

available" or a person is in "dire need" simply account for situations in which necessity requires otherwise unlawful conduct. *See Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513, 526 (1994). There is "little basically or constitutionally wrong with flexibility and reasonable breadth, rather than meticulous specificity." *Esteban v. Cent. Missouri State Coll.*, 415 F.2d 1077, 1088 (8th Cir. 1969).

Equally important, H.B. 752's exceptions do not lack standards simply because they use terms like "reasonably." *See Kashem v. Barr*, 941 F.3d 358, 374 (9th Cir. 2019) (rejecting argument that the "reasonable suspicion standard" was so vague as to invite arbitrary enforcement). Indeed, it is commonplace for officers to be given discretion to assess whether an arrest is reasonable based on the totality of the circumstances. *Barnes v. Felix*, 605 U.S. 73, 76 (2025). And any argument that the exceptions are standardless ignores that there will be many cases in which their application is clear. There can be, for example, no dispute that a man cannot enter a woman's restroom under the exception for situations in which no other restroom is "reasonably available" if there is an unoccupied, functioning men's restroom right next to the women's.

Adopting the district court's reasoning puts legislatures between "a rock and a hard place." *Schleifer*, 159 F.3d at 853. Under the district court's reasoning, "[i]f [legislatures] draft an ordinance with exceptions, those exceptions are subject to a vagueness challenge." *Id.* at 853. But "[i]f they neglect to provide exceptions, then the ordinance is attacked for not adequately protecting [constitutional] freedoms." *Id.* Vagueness doctrine is not so draconian. *See Grayned*, 408 U.S. at 110 (the law does not require that a statute or regulation describe with mathematical precision the entire scope of its application).

H.B. 752's scienter requirement further allays any possible concerns regarding vagueness. The Supreme Court has long recognized that "a scienter requirement in a statute alleviates vagueness concerns, narrows the scope of its prohibition, and limits prosecutorial discretion." *McFadden v. United States*, 576 U.S. 186, 197 (2015) (citation modified). Such a requirement ensures that a statute will not become "a trap for those who act in good faith." *Gonzales v. Carhart*, 550 U.S. 124, 149–50 (2007). The district court erred when it did not credit H.B. 752's scienter requirement in its analysis.

## CONCLUSION

The Court should reverse the district court's decision and vacate the preliminary injunction.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

JOHN P. LOWREY
Deputy Solicitor General

DENISHA CHETTY
Deputy Attorney General

Office of the Indiana
Attorney General
Indiana Government Center
South, 5th Floor
302 W. Washington Street
Indianapolis, IN 46204
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

*Counsel for Amici Curiae*

## ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General
State of Alabama

TIM GRIFFIN
Attorney General
State of Arkansas

JAMES UTHMEIER
Attorney General
State of Florida

CHRISTOPHER M. CARR
Attorney General
State of Georgia

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

LIZ MURRILL
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

CATHERINE L. HANAWAY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW H. WRIGLEY
Attorney General
State of North Dakota

ANDY WILSON
Attorney General
State of Ohio

GENTNER F. DRUMMOND
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

MARTY JACKLEY
Attorney General
State of South Dakota

KEN PAXTON
Attorney General
State of Texas

DEREK BROWN
Attorney General
State of Utah

JOHN B. MCCUSKEY
Attorney General
State of West Virginia

KEITH G. KAUTZ
Attorney General
State of Wyoming

STEVE MONTENEGRO
Speaker of the Arizona
House of Representatives

WARREN PETERSEN
President of the
Arizona Legislature

# CERTIFICATE OF COMPLIANCE

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)**: 26-4551

I am the attorney or self-represented party.

**This brief contains 3537 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ X ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ James A. Barta **Date:** September 4, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Case Management system ("ACMS"). I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: September 4, 2026

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 W. Washington Street
Indianapolis, Indiana 46204
Telephone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov