**No. 26-4551**

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

EMILIE JACKSON-EDNEY, *et al.*,

*Plaintiffs-Appellees,*

v.

RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, *et al.*,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO
Case No. 1:26-cv-261-AKB

# BRIEF OF THE PEARL THEATER AND OTHER ENTITIES DOING BUSINESS IN IDAHO AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES

Robert E. Counihan
FENWICK & WEST LLP
902 Broadway, 18th Floor
New York, NY 10010
Telephone: 212.430.2600
Email: rcounihan@fenwick.com

Yuval Mor
FENWICK & WEST LLP
902 Broadway, 18th Floor
New York, NY 10010
Telephone: 212.430.2600
Email: amor@fenwick.com

Adeline Miller
FENWICK & WEST LLP
1155 F Street NW, 12th Floor
Washington, DC 20004
Telephone: 202.970.3000
Email: amiller@fenwick.com

Gregory Adams
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Email: gadams@fenwick.com

Counsel for *Amici Curiae*

# TABLE OF CONTENTS

**Page**


STATEMENT OF INTEREST OF *AMICI CURIAE* .......... 1

INTRODUCTION .......... 3

ARGUMENT .......... 6

I. HB 752 IS UNCONSTITUTIONALLY VAGUE AND BURDENS PROTECTED EXPRESSION .......... 6

A. The Term "Designated for Use by the Opposite Biological Sex" Is Undefined and Fails to Provide an Explicit Standard for Determining When HB 752 Is Applicable. .......... 7

1. HB 752 Lacks Any Standard for "Designation" .......... 7

2. Appellants' Efforts to Save HB 752 Only Confirm that the Statute Fails to Provide an Intelligible Standard. .......... 10

3. The Legislative History Offers No Insight .......... 13

B. Appellants' Newly Proposed Interpretation of "Designated" Compels Unwanted Speech, Chills Protected Expression, and Violates the First Amendment. .......... 14

C. Appellants' Reliance on the Doctrine of Constitutional Avoidance and HB 752's Scienter Requirement Does Not Remedy the Statute's Vagueness or First Amendment Flaws. .......... 16

1. Appellants' Arguments Run Afoul of the Doctrine of Constitutional Avoidance .......... 16

2. HB 752's Scienter Requirement Cannot Cure the Statute's Vagueness .......... 18

II. Single-user restrooms are not a viable alternative .......... 20

III. Discrimination harms Idaho businesses ..... 22

A. HB 752 Deters Customers and Costs *Amici* Business. ..... 23

B. HB 752 Risks Statewide Economic Backlash and the Loss of Workers and Entrepreneurial Talent that Idaho Businesses Need to Grow. ..... 24

C. HB 752 Saddles Businesses with Operational Burdens and Enforcement Uncertainty Rooted in Appearance-Based Scrutiny. ..... 25

CONCLUSION ..... 25

CERTIFICATE OF COMPLIANCE ..... 27

CERTIFICATE OF SERVICE ..... 28

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.C. ex rel. M.C. v. Metro. Sch. Dist. of Martinsville*,
75 F.4th 760 (7th Cir. 2023) .......... 23

*Baggett v. Bullitt*,
377 U.S. 360 (1964) .......... 16

*Bongo Prods., LLC v. Lawrence*,
603 F. Supp. 3d 584 (M.D. Tenn. 2022) .......... 9

*City of Chicago v. Morales*,
527 U.S. 41 (1999) .......... 9, 18

*Clark v. Martinez*,
543 U.S. 371 (2005) .......... 17

*Coates v. City of Cincinnati*,
402 U.S. 611 (1971) .......... 18

*Crowell v. Benson*,
285 U.S. 22 (1932) .......... 16

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .......... 20

*Fleuti v. Rosenberg*,
302 F.2d 652 (9th Cir. 1962) .......... 13

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) .......... 6, 16

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) .......... 23

*Hunt v. City of Los Angeles*,
638 F.3d 703 (9th Cir. 2011) .......... 7, 8, 9, 19

*Jackson-Edney v. Labrador*,
839 F. Supp. 3d 979 (D. Idaho June 16, 2026) .......... 10, 11, 12, 25

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
585 U.S. 878 (2018)....................................................................................15

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)....................................................................................17

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
585 U.S. 755 (2018)....................................................................................15

*NetChoice, LLC v. Bonta*,
170 F.4th 744 (9th Cir. 2026) ....................................................................18, 20

*Nw. Ass'n of Indep. Schs. v. Labrador*,
166 F.4th 1148 (9th Cir. 2026) ..............................................................16, 17, 18

*Or. Ass'n of Hosps. & Health Sys. v. Oregon*,
734 F. Supp. 3d 1139 (D. Or. 2024) ..............................................................6

*United States v. Daas*,
198 F.3d 1167 (9th Cir. 1999) ......................................................................13

*United States v. Davis*,
588 U.S. 445 (2019)..................................................................................17, 18

*United States v. Jae Gab Kim*,
449 F.3d 933 (9th Cir. 2006) ........................................................................18

*United States v. Kilbride*,
584 F.3d 1240 (9th Cir. 2009) ..................................................................6, 19, 20

*United States v. Kuzma*,
967 F.3d 959 (9th Cir. 2020) ........................................................................11

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982)............................................................................12, 16, 18

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
576 U.S. 200 (2015)....................................................................................15

*Whitfield v. United States*,
543 U.S. 209 (2005)..................................................................................13, 14

*Wooley v. Maynard*,
430 U.S. 705 (1977) .......... 16

**STATUTES AND RULES**

Idaho Code § 18-4117(1) .......... 3, 7, 24

Ind. Code §§ 34-13-0-.07 to -11 (2015) ("Religious Freedom Restoration Act") .......... 24

**OTHER AUTHORITIES**

29 C.F.R. § 1910.141(c)(1)(i) .......... 22

"'Bathroom bill' to cost North Carolina $3.76 billion," CNBC (Mar. 27, 2017) .......... 24

*Designate*, Black's Law Dictionary (12th ed. 2024) .......... 11

*Designate*, Merriam-Webster .......... 7

*Hearing on H.B. 752 Before the H.*, 2026 Leg., 68th Sess. (Idaho Mar. 16, 2026) .......... 13

*Hearing on H.B. 752 Before the H. Comm. on Judiciary, R. & Admin.*, 2026 Leg., 68th Sess. (Idaho Mar. 11, 2026) .......... 13, 14

*Hearing on H.B. 752 Before the S.*, 2026 Leg., 68th Sess. (Idaho Mar. 27, 2026) .......... 13

*Hearing on H.B. 752 Before the S. Comm. on Judiciary & R.*, 2026 Leg., 68th Sess. (Idaho Mar. 23, 2026) .......... 13

"Indiana's Religious Freedom Restoration Act Is Bad for Business," Center for American Progress (Mar. 31, 2015) .......... 24

## STATEMENT OF INTEREST OF *AMICI CURIAE*

*Amici Curiae* are Idaho businesses The Pearl Theater, Inc., Balcony Club, Inc., ART HAUS LLC d/b/a KIN, Michaela Rose Cosmetology LLC d/b/a Created in Chaos, and Advocate Warriors LLC (collectively, "*amici*"). *Amici* are open to the general public and qualify as places of public accommodation under Idaho Code § 67-5902. As longstanding local businesses serving communities across the state, some for more than two decades, *amici* are fixtures of Idaho's culture and commerce that operate across a diverse array of industries including performing arts, fine dining, dance and nightlife, cosmetology, and professional mental health and peer support services. To advance their missions of providing quality goods and services to residents across the state, *amici* open their doors to all and make every effort to ensure that their customers feel welcome.

*Amici* represent the interests of businesses throughout the state and the communities they serve. They provide a crucial perspective on the questions presented by this appeal given *amici*'s extensive experience acting as public accommodations in Idaho. The Court should thus consider *amici*'s brief because it provides this important perspective about the workability of the law challenged by Plaintiffs-Appellees.

All parties consented to the filing of this brief, and *amici* therefore are permitted to file under Rule 29(a)(2) of the Federal Rules of Appellate Procedure.

No party's counsel authored this brief, and no party, party's counsel, or anyone other than *amici* funded its preparation or submission.

## INTRODUCTION

Idaho's House Bill 752 ("HB 752") makes it a criminal offense, punishable by up to one year in prison for a first offense and up to five years for subsequent offenses, for any individual to "knowingly and willfully enter a restroom or changing room . . . that is designated for use by the opposite biological sex." Idaho Code § 18-4117(1). The prohibition applies to any restroom or changing room in any place of public accommodation, including the businesses that *amici* operate. *Id.*

But the law fails to explain what it means for a restroom to be "designated for use by" a particular "biological sex," and thus violates the guarantees of due process secured by the Fifth and Fourteenth Amendments. It is unclear whose interpretation controls—whether it be that of *amici*, police, individual Idahoans, or some other entity. This is particularly problematic when the State suggests that citizens "ask the proprietor who the intended users of the bathrooms are," which effectively asks *amici* and other Idaho businesses to subject their customers to criminal liability by imposing their own interpretation. *See Jackson-Edney v. Labrador*, No. 1:26-cv-00261-AKB, ECF No. 40 at 6 (D. Idaho May 21, 2026) ("State PI Opp'n").

The law is unconstitutionally vague. Put simply, a business cannot know whether a sign on a restroom door for "Women" or "Men" conveys a designation for biological sex. Indeed, even the State concedes that the meaning of such signage depends on, and is subject to, interpretation by the proprietor.

Prior to HB 752, Idaho businesses rarely, if ever, expressly referenced "biological sex" in signage for their restrooms. That is, many Idaho businesses, including *amici*, simply posted signs stating "Men" or "Women," and then allowed transgender customers to use the restroom that aligned with their gender identity. There is no reason why those same signs would now mean something different for those same businesses or patrons. To *amici*, a restroom door marked "Men" or "Women" has never communicated that only "biological" men or women may use such a facility.

Now, however, HB 752 puts *amici* and other Idaho businesses in an uncertain and fraught position. Even though the businesses do not know what it means for a restroom to be "designated for use by the opposite biological sex" as the law requires, customers have nowhere else to turn for answers. Visitors may ask businesses for permission to use restrooms whose signage matches their gender identity, and Appellants may even invite visitors to do so. But this leaves businesses and their employees with the burden of deciding how to apply HB 752. Yet even if a business communicates what *that business* intends for a particular restroom—*e.g.*, that a transgender man may use the restroom marked "Men"—it is unclear if the business's perspective is legally relevant or sufficient under the law, or whether the interpretation of law enforcement, or even another patron, will control.

Moreover, many businesses also share restrooms—that is, shared facilities in a building with multiple storefronts. These arrangements raise further questions about which business has authority to designate a restroom under HB 752, whether it be the landowner, property manager, each affected business, or some other party.

On the other end of the spectrum, the suggestion that signs marked "Men" or "Women" alone designate restrooms for use by biological sex—Appellants' fallback position—also poses unworkable problems. This would mean that HB 752 effectively converted every such already-existing sign into a legally binding designation for biological sex, compelling *amici* and other Idaho businesses to convey through their signage, existing and in the future, that their conception of biological sex is the same as the government's. But such compelled endorsement of the government's message on a controversial topic would violate *amici*'s First Amendment rights.

The law thus forces businesses across the state to engage in legal guesswork when faced with bona fide requests from customers to use restrooms or changing areas. That uncertainty is especially grave because HB 752's criminal penalties are unlike any other in the country. Aside from the likelihood that *amici* stand to suffer significant loss of business (like that suffered by businesses in other states that enacted such laws), *amici* object to a law that exposes their customers to incarceration for using *amici's* restrooms—especially when businesses may

inadvertently create criminal exposure for their customers by doing exactly what the State suggests: advising them which restroom *the business* believes is appropriate.

As explained below, HB 752 runs afoul of due process as unconstitutionally vague and compels businesses to convey a message they neither understand nor endorse; the State's suggestion that transgender Idahoans use single-user restrooms is no answer; and the law inflicts real economic harm on Idaho businesses. Accordingly, *amici* urge this Court to affirm the district court's preliminary injunction.

## ARGUMENT

### I. HB 752 IS UNCONSTITUTIONALLY VAGUE AND BURDENS PROTECTED EXPRESSION

The vagueness doctrine, derived from the Due Process Clause of the Fifth and Fourteenth Amendments, demands that a statute's prohibitions be "clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Specifically, due process requires that a law: (1) "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," and (2) "provide explicit standards for those who apply" the law. *Id.* HB 752 does neither.

"For statutes . . . involving criminal sanctions," courts in this Circuit impose a heightened vagueness standard, requiring a greater degree of clarity. *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009); *see also Or. Ass'n of Hosps. &*

*Health Sys. v. Oregon*, 734 F. Supp. 3d 1139, 1154 (D. Or. 2024). Courts similarly apply a heightened vagueness standard where a statute "implicates First Amendment rights," such as here, where the government compels certain speech by private actors. *Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011).

### A. The Term "Designated for Use by the Opposite Biological Sex" Is Undefined and Fails to Provide an Explicit Standard for Determining When HB 752 Is Applicable.

HB 752 criminalizes "knowingly and willfully enter[ing] a restroom . . . in a government-owned building or a place of public accommodation . . . that is *designated for use by the opposite biological sex*." Idaho Code § 18-4117(1) (emphasis added). The statute, however, does not define when a restroom is deemed "designated"—what designation consists of, who conducts it, how it is evidenced, or how it is contested—and clarity for this standard is found in neither the ordinary meaning of the word, the statute's legislative history, nor Appellants' theories.

#### 1. HB 752 Lacks Any Standard for "Designation"

HB 752 does not require covered entities to perform any affirmative acts to "designate" their restrooms, nor does it explain how to "designate" for biological sex. The plain meaning of "designating" requires an affirmative act, presupposing an acting—*i.e.*, "designating"—party. *See Designate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/designate (last accessed Oct. 16, 2026) (defining "designate" as a transitive verb meaning "to indicate and set apart

for a specific purpose"). HB 752, however, identifies no standard by which a restroom becomes "designated" for use by a particular biological sex, nor does it identify any relevant actors to set such a standard.

HB 752 is thus wholly silent as to when a restroom is "designated for use by the opposite biological sex," whether by reference to signage, specific language, historical usage, the word of a particular employee, or majority patronage. This failure to provide any standard renders the phrase vague and makes HB 752 analogous to many statutes that courts have struck down as void for vagueness.

In *Hunt v. City of Los Angeles*, this Court held that a civil ordinance regulating the sale of merchandise with political or religious messaging was unconstitutionally vague because the ordinance's language left "unanswered whether the product itself must carry and display the message, or whether it is sufficient for the vendor to explain the product's message." 638 F.3d at 711. The ordinance was void for vagueness because it "fail[ed] to explain *when* merchandise has a message" such that "the line between allowable and prohibited sales of merchandise [was] murky." *Id.* at 711–13 (emphasis added).

HB 752 similarly leaves unanswered when a restroom is deemed to be "designated for use by the opposite biological sex." As in *Hunt*, it is unclear whether designation from signage, historical usage, or a particular employee's word suffices. Just as the *Hunt* vendor could not know whether his merchandise conveyed a

political or religious message, *amici* and other Idaho businesses cannot know whether their restroom signage conveys a biological sex designation. HB 752 is thus unconstitutionally vague. *See id.* at 711.

*City of Chicago v. Morales* is also instructive. 527 U.S. 41 (1999). There, the Supreme Court held that a loitering prohibition was unconstitutionally vague because "no standard of conduct [was] specified at all" by the ordinance, which defined loitering as "remain[ing] in any one place with no apparent purpose." *Id.* at 60–61 (citation omitted). According to the Court, neither citizens nor police officers could judge with any certainty whether someone had "apparent purpose" within the meaning of the statute, and the resulting vagueness "about what loitering is covered . . . and what is not" doomed the ordinance. *Id.* at 57–59.

So too here: HB 752's vagueness is the product of uncertainty over which designations are covered and which are not. HB 752 fails to provide a standard by which *amici* can answer this question. It is thus no wonder that federal courts have characterized virtually identical language in similar statutes as ambiguous with respect to their use of "designate." *See Bongo Prods., LLC v. Lawrence*, 603 F. Supp. 3d 584, 594 (M.D. Tenn. 2022) ("The language stating that the Act applies only to restrooms '[d]esignated for a specific biological sex' is somewhat confusing, given that few, if any, public restrooms in Tennessee make any express reference to 'biological sex' in their signage.") (alteration in original).

For their part, *amici* did not intend to restrict restroom use according to biological sex when including signage on restrooms in their facilities. The District Court recognized *amici*'s position and the dilemma they now face, observing that "signage for men and women does not necessarily mean the establishment intends to limit the restrooms' use to biological sex." *Jackson-Edney v. Labrador*, 839 F. Supp. 3d 979, 998 (D. Idaho June 16, 2026) ("PI Order") (slip op. at 17, ECF No. 58). Indeed, before the passage of HB 752, Plaintiffs-Appellees had, for years, entered and used "restrooms with signage for the opposite biological sex" and "the mere passage of H.B. 752 does not mean that those same restrooms are now 'designated' by the establishment only for the opposite biological sex." *Id.* This is precisely the problem *amici* and other Idaho businesses now face, and HB 752 offers no answer while subjecting *amici's* customers to *criminal prosecution*.

### 2. Appellants' Efforts to Save HB 752 Only Confirm that the Statute Fails to Provide an Intelligible Standard.

Appellants' own suggestion that citizens "ask the proprietor who the intended users of the bathrooms are" admits HB 752's vagueness. *See* State PI Opp'n at 6. That suggestion concedes the point: if a restroom sign that says "Women" or "Men," or contains some other pictographic representation of gender, must be interpreted by the proprietor, then the sign alone does not convey a biological-sex designation, and neither the business nor its patrons can know whether it does. As the District Court recognized, this standard "does not give adequate notice of the proscribed conduct."

PI Order at 17–18. Moreover, the District Court appropriately and accurately questioned whether a proprietor even has the authority to control the designation "given that H.B. 752 is a criminal statute that does not contain an exception for consent" despite its many other exceptions. *Id.*

The State's response that patrons should "ask the proprietor" also ignores the many instances in which the proprietor is not available or in which multiple businesses share common restrooms, introducing additional layers of vagueness rather than providing clarity. In such instances, Appellants have no answer about who determines the intended users of a restroom.

Appellants' reliance on case law regarding the word "design" is inapt, as the operative word here is "designate[d]," which carries a different meaning. Op. Br. at 29. As this Court has previously explained, when used in a statute the word "design" "requires a purely objective examination" rather than "an inquiry into . . . subjective intent." *United States v. Kuzma*, 967 F.3d 959, 968 (9th Cir. 2020). Understanding a restroom's "designation," by contrast, requires understanding the intent of the *designating party*, an inherently subjective inquiry. *See, e.g., Designate*, Black's Law Dictionary (12th ed. 2024) ("To *choose* (someone or something) for a particular job or purpose.") (emphasis added). Appellants concede as much when they suggest that citizens "ask the proprietor who the intended users of the bathrooms are," admitting that at least the proprietor's subjective intent matters. State PI Opp'n at 6.

Appellants' reliance on *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982), is equally unhelpful. Op. Br. at 29. At the outset, the Appellees in *Hoffman Estates* conceded that the phrase "designed for use with illegal drugs" "refers to structural characteristics of an item." 455 U.S. at 501. The Supreme Court thus read the phrase to reach "an item that is principally used with illegal drugs by virtue of its objective features, *i.e.*, features designed by the manufacturer." *Id.* But no such concession has been made here. And a sign reading "Women" or "Men" has no comparable "structural" attribute—its meaning requires interpretation and may depend on what the *business* intends.

To the extent there are any "structural attributes" of restroom signs, they do not function as Appellants claim. For years, businesses across Idaho, including *amici*, have displayed signs for "Men" and "Women" and pictographs of figures in trousers or skirts to denote gender identity as much as biological sex, and Plaintiffs-Appellees have used restrooms consistent with their gender identity. As the district court observed, "signage for men and women does not necessarily mean the establishment intends to limit its restrooms' use to biological sex," and "[t]he mere passage of H.B. 752 does not mean that those same restrooms are now 'designated' by the establishment only for the opposite biological sex." PI Order at 17.

### 3. The Legislative History Offers No Insight

If a statute is ambiguous, "courts may look to its legislative history for evidence" of intent. *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999). Where a legislature declines to define a statute's term, courts should not "override that choice based on vague and ambiguous signals from legislative history." *Whitfield v. United States*, 543 U.S. 209, 216–17 (2005).[1]

The Idaho Legislature did not shed light on when a restroom is "designated for use by the opposite biological sex" when considering HB 752—not during committee, not on the House floor, not on the Senate floor.[2] Indeed, the legislative history only highlights *amici's* concern as the only reference to "designation" during Committee review involved the bill's sponsor dodging this very issue when asked whether a "women's only" sign would invoke HB 752's prohibition. He responded:

---

[1] Although "access may not be had to the legislative history in order to establish" the meaning of a statute that is void for vagueness on its face, the legislative history of HB 752 provides no clarity in any event. *See Fleuti v. Rosenberg*, 302 F.2d 652, 654–55, n.5 (9th Cir. 1962) (recognizing that the void for vagueness doctrine assumes that all persons know the content of statutes, but that courts may not "assum[e] that all persons in fact know the relatively inaccessible legislative history of statutes").

[2] *See generally Hearing on H.B. 752 Before the H. Comm. on Judiciary, R. & Admin.*, 2026 Leg., 68th Sess. (Idaho Mar. 11, 2026); *Hearing on H.B. 752 Before the S. Comm. on Judiciary & R.*, 2026 Leg., 68th Sess. (Idaho Mar. 23, 2026);*Hearing on H.B. 752 Before the H.*, 2026 Leg., 68th Sess. (Idaho Mar. 16, 2026); *Hearing on H.B. 752 Before the S.*, 2026 Leg., 68th Sess. (Idaho Mar. 27, 2026).

"My intention . . . was to not put any more responsibility on businesses. It was to put the responsibility on the perpetrator." *See Hearing on H.B. 752 Before the H. Comm. on Judiciary, R. & Admin.*, 2026 Leg., 68th Sess. (Idaho Mar. 11, 2026) (statement of Rep. Rasor). *Amici* and other Idaho businesses cannot reasonably infer what to make of such a statement—especially when, as explained above, the State now suggests that businesses apply their discretion. The Court should not "override" HB 752's failure to explain designation based on this "vague and ambiguous signal[]." *Whitfield*, 543 U.S. at 216–17.

HB 752's use of the phrase "designated for use by the opposite biological sex" leaves the statute with no explicit or ascertainable standard for determining when the law is applicable. The plain and ordinary meaning of, Appellants' theories on, and the legislative history regarding the phrase resolve no ambiguity in HB 752's prohibition.

### B. Appellants' Newly Proposed Interpretation of "Designated" Compels Unwanted Speech, Chills Protected Expression, and Violates the First Amendment.

After the District Court discredited Appellants' proposal to "ask the proprietor," Appellants now urge that "designate" be construed objectively—*i.e.*, that every existing restroom sign labeled "Men" or "Women" is hereafter a designation for biological sex. *See* Op. Br. at 27–28. These conflicting constructions only highlight the fraught nature of *amici*'s position. Read subjectively, "designated"

turns, at least in part, on a proprietor's intent which, as shown above, fails to provide an ascertainable standard for determining when to apply HB 752. Read objectively, it enlists every business with a gender-labeled sign in HB 752's criminal regime regardless of intent and, as shown below, compels speech.

The First Amendment prohibits the government from "compel[ling] private persons to convey the government's speech." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208 (2015). Such government action results in a constitutionally improper scenario wherein "individuals are coerced into betraying their convictions" by "involuntar[ily] affirm[ing]" the government's position on a "controversial" topic. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 892–93 (2018) (citation omitted). This is particularly so when the government's message is not "purely factual." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 768–69 (2018) (citation omitted).

Under Appellants' objective reading, every existing gender-labeled sign becomes a criminally enforceable biological-sex designation along the government's conception of gender, regardless of the business's intent. That reading would compel *amici*, who *have not restricted* and *do not intend to restrict* their restrooms by biological sex, to display a government-prescribed message on their own premises. The State may not require private parties to serve as an "instrument

for fostering public adherence to an ideological point of view [they] find[] unacceptable." *Wooley v. Maynard*, 430 U.S. 705, 715 (1977).

That construction also chills Idaho businesses' inclusive expression: businesses that signal inclusion through rainbow signage, posted statements, or employee instructions cannot know whether the words on the door override those efforts. Ambiguity of this kind causes citizens to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Hoffman Ests.*, 455 U.S. at 494 n.6 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)) (alteration in original); *see also Grayned*, 408 U.S. at 109.

### C. Appellants' Reliance on the Doctrine of Constitutional Avoidance and HB 752's Scienter Requirement Does Not Remedy the Statute's Vagueness or First Amendment Flaws.

#### 1. Appellants' Arguments Run Afoul of the Doctrine of Constitutional Avoidance

Appellants invoke the avoidance canon, under which "Idaho courts construe statutes to avoid conflict with the federal Constitution wherever possible," in a parenthetical as a backstop attempt to save HB 752 from its unconstitutional vagueness. *See* Op. Br. at 29; *Nw. Ass'n of Indep. Schs. v. Labrador*, 166 F.4th 1148, 1162 (9th Cir. 2026). Courts applying the canon "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62 (1932). But three limits on the canon foreclose its use here.

*First*, the canon "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)). Even then, a court "must interpret the statute, not rewrite it." *Id.* at 286 (emphasis omitted). *Nw. Ass'n* itself refused to "insert missing terms into the statute" or "rewrite a state law to conform it to constitutional requirements." 166 F.4th at 1165 (citations omitted). HB 752 does not offer two plausible meanings of "designated"; it offers no mechanism of designation at all. Specifying who designates, how, and with what effect would rewrite the statute, not construe it.

*Second*, the canon may narrow a criminal statute but not expand it. The Supreme Court has, on occasion, "adopted the narrower construction of a criminal statute to avoid having to hold it unconstitutional," but has never "invoked the canon to expand the reach of a criminal statute in order to save it." *United States v. Davis*, 588 U.S. 445, 463 (2019) (emphases omitted). Doing so "would risk offending the very same due process and separation-of-powers principles on which the vagueness doctrine itself rests." *Id.* at 464. Appellants' objective reading would do exactly that, converting every existing "Men" and "Women" sign in Idaho into a criminally enforceable biological-sex restriction that the business never chose.

*Third*, every available construction is constitutionally deficient. Read objectively, "designated," as shown above, compels speech. Read subjectively, it

turns on a proprietor's intent, which no customer, employee, or officer can discern from the text, leaving a statute under which "no standard of conduct is specified at all." *Morales*, 527 U.S. at 60 (plurality opinion) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). This Court identified a comparable defect in another Idaho statute that did "not purport to establish an objective standard" and instead "effectively allow[ed] individual claimants—or the State—to decide." *Nw. Ass'n*, 166 F.4th at 1168. Avoidance selects between a constitutional and an unconstitutional reading; it offers no escape when every reading fails. In that event, the judicial role "is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite [the legislature] to try again." *Davis*, 588 U.S. at 448.

### 2. HB 752's Scienter Requirement Cannot Cure the Statute's Vagueness

Defendants-Appellants and their *amici* contend that HB 752's "knowingly and willfully" element cures its vagueness. *See* State PI Opp'n at 5. It does not. A scienter requirement "may mitigate a law's vagueness," *Hoffman Ests.*, 455 U.S. at 499, but "[a]bsent any statutory guidance" on the operative term, "the provision's scienter requirement does not solve its vagueness." *NetChoice, LLC v. Bonta*, 170 F.4th 744, 766 (9th Cir. 2026). *See also id.* (quoting *United States v. Jae Gab Kim*, 449 F.3d 933, 943 (9th Cir. 2006)) (explaining that a scienter element "cannot mitigate vagueness where what is 'materially detrimental' to any single child's 'well-being' is not clear," because "*what* [that] must be proven is . . . vague")

(alterations in original); *Kilbride*, 584 F.3d at 1259 ("[W]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.") (citation modified).

A person can "knowingly" enter a restroom, but whether that restroom "is designated for use by the opposite biological sex" is the question HB 752 leaves open. Scienter addresses mental state; it cannot supply a definition the statute omits. No one can "knowingly" violate a designation that no one can identify.

*Hunt* is again instructive. As explained above, the vending ordinance there was void because it failed to explain when merchandise carried a political or religious message, "leaving unanswered whether the product itself must carry and display the message, or whether it is sufficient for the vendor to explain the product's message." *Hunt*, 638 F.3d at 711. The ordinance offered "no examples or explanations as to which interpretation applies," and threatened expression because people "may choose not to exercise their rights for fear of being criminally punished." *Id.* at 712–13. HB 752 shares that defect: it does not say or otherwise make clear whether signage alone designates a restroom, whether the proprietor's communicative intent governs, or whether some other source of designation is relevant. Just as the vendor in *Hunt* could not know whether his shea butter conveyed a political or religious message, a business cannot know whether its

"Women" or "Men" sign conveys a biological-sex designation because even Appellants concede that such signage is subject to further interpretation by the proprietor.

These defects compound. Courts invalidate vague laws not only to ensure notice and prevent arbitrary enforcement, but also "to avoid any chilling effect on the exercise of First Amendment freedoms." *Kilbride*, 584 F.3d at 1256–57 (citation omitted). "[W]hen speech is involved, rigorous adherence to [the void for vagueness doctrine] is necessary to ensure that ambiguity does not chill protected speech." *NetChoice*, 170 F.4th at 764 (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012) (first alteration added)). HB 752 cannot meet that standard.

Thus, HB 752 is unconstitutionally vague given its lack of an explicit standard and its resulting chilling of protected expression, and Appellants' arguments to the contrary carry no weight. *Amici* cannot know whether the signs already on their restroom doors now carry criminal consequences, and their customers cannot know either. HB 752 does not meet the heightened vagueness standard for statutes involving criminal sanctions and implicating First Amendment rights. The Court should therefore affirm the district court's order granting a preliminary injunction.

## II. SINGLE-USER RESTROOMS ARE NOT A VIABLE ALTERNATIVE

Appellants argued in the district court that transgender Idahoans can use single-user restrooms. State PI Opp'n at 20. But HB 752 does not require businesses

to provide single-user restrooms, and it offers no accommodation when a business has none. That alternative fails in practice for three reasons: many businesses have no single-user restrooms at all; it is not feasible for those businesses to convert existing multi-stall facilities to single-user restrooms; and the record confirms that gender-neutral restrooms are frequently unavailable in daily life.

HB 752 reaches virtually every place of public accommodation in Idaho. Many of those businesses have only multi-stall restrooms labeled "Men" and "Women," with no single-user facility at all. For those businesses, the single-user alternative does not exist, and a customer or employee has no lawful option other than to forgo the restroom or the business altogether.

Converting a multi-stall restroom into single-user facilities requires demolition, new plumbing, and new walls and doors for each separate room, and these costs fall hardest on small and mid-sized businesses. Even a business willing to bear that expense often cannot make the conversion without sacrificing the restroom capacity it needs. For a restaurant during the dinner rush, a theater at intermission, or a large retail store, replacing multi-stall restrooms with single-user rooms in the same footprint means the business can serve fewer people at once. For high-volume businesses, converting all restrooms to single-user is simply not workable.

Capacity is also a legal requirement. For example, federal regulations require employers to provide a minimum number of toilets that increases with the number of employees. *See* 29 C.F.R. § 1910.141(c)(1)(i). A business that must meet those minimums may be unable to do so if every restroom is converted to single-use. HB 752 thus leaves such businesses with a choice between keeping the multi-user facilities the law requires, while exposing their customers and employees to criminal liability, and undertaking renovations that may leave them out of compliance.

*Amici*'s experience is borne out by the record. Plaintiffs-Appellees established through declarations that they are "frequently unable to locate gender-neutral restrooms in their day-to-day lives." Pls.' Mem. Supp. Mot. for Prelim. Inj. at 7, ECF No. 3-1. That unrebutted evidence confirms that single-user alternatives are often unavailable. HB 752's exception for single-user facilities is no solution. Where no such facility exists, the statute leaves transgender Idahoans, and the businesses that wish to serve them, with no lawful option.

## III. DISCRIMINATION HARMS IDAHO BUSINESSES

HB 752 harms not only the transgender Idahoans it targets but also the Idaho businesses that must operate under it. *Amici* are places of public accommodation whose success depends on every member of the public feeling welcome on their premises. Other courts of appeals have rejected policies requiring transgender individuals to use separate restrooms, even where single-user alternatives exist. *See,*

*e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 613 (4th Cir. 2020); *A.C. ex rel. M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 773 (7th Cir. 2023). HB 752 carries that exclusion into the private marketplace, attaching criminal liability to an ordinary visit to an Idaho business. It harms *amici* in at least three ways: it deters customers and diminishes patronage; it erodes the workforce and entrepreneurial base on which Idaho businesses depend; and it forces businesses to absorb the operational burdens and uncertainty of an appearance-based enforcement regime they did not choose.

### A. HB 752 Deters Customers and Costs *Amici* Business.

The injury to transgender customers is clear and serious: HB 752 tells them they are unwelcome and exposes them to criminal prosecution for using a restroom. But that injury does not stop at the individual; it translates directly into economic loss for the businesses those customers would otherwise patronize. A law signaling that a class of customers is unwelcome drives away not only those customers but also the family, friends, and communities who support them. That harm is already occurring: Plaintiffs-Appellees plan to "spend less time outside of their homes," Pls.' Mem. Supp. Mot. for Prelim. Inj. at 7, Dkt. 3-1, and one "is planning to move out of the state," *id.* at 6. Every hour a customer spends at home rather than in a restaurant, shop, or theater is an hour of lost patronage for an Idaho business.

### B. HB 752 Risks Statewide Economic Backlash and the Loss of Workers and Entrepreneurial Talent that Idaho Businesses Need to Grow.

When residents leave the State, businesses lose not only customers but also employees and the entrepreneurs who start and sustain new enterprises. Experience elsewhere confirms that these costs are real and substantial. For example, North Carolina's restroom law, H.B. 2, was estimated to cost that state $3.76 billion. *See* "'Bathroom bill' to cost North Carolina $3.76 billion," CNBC (Mar. 27, 2017), https://www.cnbc.com/2017/03/27/bathroom-bill-to-cost-north-carolina-376-billion.html. Similarly, Indiana's 2015 Religious Freedom Restoration Act prompted significant corporate backlash, with major companies announcing "they will protest the new law by either eliminating or dramatically reducing spending in the state of Indiana." *See* "Indiana's Religious Freedom Restoration Act Is Bad for Business," Center for American Progress (Mar. 31, 2015), https://www.americanprogress.org/article/indianas-religious-freedom-restoration-act-is-bad-for-business. HB 752, which makes a second offense a felony, is harsher than either law. Idaho Code § 18-4117(1). Idaho businesses can therefore expect a similar or greater backlash, because the prospect of criminal exposure magnifies the deterrent effect on residents, workers, and visitors alike.

### C. HB 752 Saddles Businesses with Operational Burdens and Enforcement Uncertainty Rooted in Appearance-Based Scrutiny.

Because no one can verify biological sex by sight, enforcement of HB 752 necessarily turns on appearance. The Idaho Chiefs of Police Association testified that the law places an "unrealistic and absurd burden" on officers to "identify visually the biological sex of another human being." PI Order at 16 (quoting Dkt. 3-3 ¶ 19a). If trained officers cannot make that determination, customers and employees cannot either.

The predictable result is false accusations against anyone who does not conform to gender stereotypes—transgender and non-transgender customers alike. Each confrontation occurs on a business's premises, alienates customers, disrupts operations, and leaves employees to resolve on the spot questions the statute itself leaves unanswered—beginning with the foundational question of whether a restroom marked "Men" or "Women" now conveys a criminally enforceable biological-sex designation. *Amici* thus bear the costs of HB 752 twice over: they lose the patronage of customers the law drives away, and they inherit the burden of policing a standard that neither the Legislature nor law enforcement can define.

## CONCLUSION

For all these reasons, the Court should affirm the district court's preliminary injunction order.

Respectfully submitted,

Dated: October 16, 2026

FENWICK & WEST LLP

By: */s/ Yuval Mor*

Yuval Mor
Robert E. Counihan
902 Broadway, 18th Floor
New York, NY 10010-6035
Telephone: (212) 430-2600
amor@fenwick.com
rcounihan@fenwick.com

Gregory Adams
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: (415) 875-2300
gadams@fenwick.com

Adeline Miller
1155 F Street NW, 12th Floor
Washington, DC 20004
Telephone: (202) 970-3000
amiller@fenwick.com

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number**: 26-4551

I am the attorney or self-represented party.

**This brief contains 5,663 words**, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(5) and (6).

I certify that this brief *(select only one):*

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32- 2(b) because (select only one):

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Dated: October 16, 2026

*/s/ Yuval Mor*
Yuval Mor

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that on October 16, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

Dated: October 16, 2026

*<u>/s/ Yuval Mor</u>*
Yuval Mor

*Counsel for Amici Curiae*